UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JUSTIN ALEXANDER,

Petitioner,

v.

WARDEN,

Respondent.

Cause No. 3:24-CV-235-PPS-JEM
also in 3:24-CV-236
3:24-CV-237

**OPINION AND ORDER**

Justin Alexander, a prisoner without a lawyer, filed three habeas corpus petitions

under 28 U.S.C. § 2254 to challenge his convictions in three separate State criminal

proceedings: there's a burglary conviction after a trial; a robbery conviction also after a

trial; and a third conviction after a plea of guilty for unlawful possession of a firearm,

receipt of stolen automobile parts, and resisting arrest. All of the convictions were out of

Allen County, and on September 25, 2013, the judge sentenced Alexander during a

consolidated sentencing hearing. Alexander was found to be a habitual offender, and,

consequently, his sentence turned out to be a whopper—102 years of incarceration.

On June 11, 2024, the Warden filed a motion to consolidate these three habeas

cases.  The Warden made the point that the State courts considered the underlying

convictions all at once at sentencing, on direct appeal, and on post-conviction appeal.

Additionally, the Warden noted the substantial overlap in the claims asserted by

Alexander in the three habeas cases. [DE 8]. Because handling all three habeas cases in

one fell swoop made a lot of sense, I granted the Warden's motion to consolidate [DE 10], and I will therefore discuss the claims in all the habeas cases in this opinion.

In considering the petition, I must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Let's start with the burglary conviction. Here's how the Court of Appeals of Indiana summarized the facts of that conviction:

> On December 31, 2012, Barbara Nagy and her family left their house to attend a New Year's Eve party. They locked all of the house's doors and ensured that the windows were closed but left at least one window unlocked. When they returned home at 6:00 p.m. the next day, the front door was unlocked. A screen had been removed from the kitchen window and was on the ground outside. Someone had stolen their televisions, computers, game consoles, and a handgun. An officer was dispatched to the scene, and he found a palm print on a coffee table. A fingerprint examiner subsequently matched the palm print to Alexander. In addition, Alexander was later arrested after a vehicle chase as discussed below, and he had Nagy's gun at the time of the arrest. The Nagys did not know Alexander and had not given him or anyone else permission to enter their home in their absence.
>
> The State charged Alexander with Class B felony burglary. Later, the State amended the charging information to add an habitual offender enhancement. The burglary charge was tried to a jury, and the jury found Alexander guilty. The habitual offender enhancement was tried to the bench, and the judge determined that Alexander was an habitual offender.

*Alexander v. State*, 13 N.E.3d 557 (Ind. Ct. App. 2014); [DE 11-13 at 2-5].

As for the robbery conviction, these are the facts as found by the Court of Appeals of Indiana:

> At five in the morning on January 7, 2013, fifty-nine-year-old Wanda Boehme stopped at a convenience store on her way to work. She noticed that a man, later identified as Alexander, watched her check out at the cashier's stand and transact business at the store's lottery machine before he walked outside. Boehme returned to her car, and Alexander followed

her to her employer's parking lot. When she parked, she saw Alexander park his car in a nearby alley.

Boehme waited for a while before getting out of her car because the situation "didn't feel good." When she did, Alexander approached her with a handgun. Boehme swung her purse at him, but he backed her up against her car and demanded money. She gave him her cash. When Alexander demanded more, Boehme pressed the alarm button on her key fob, and the car alarm activated. Alexander told her to turn it off. Boehme refused, saying "shoot me, go ahead and shoot me they know who you are." Alexander left and was apprehended several days later during a vehicle chase as discussed below. After his arrest, an officer transported him to the hospital for treatment. Alexander complained of being pepper sprayed during the arrest, saying "I know I been robbing and stuff but there's no cause for this."

The State charged Alexander with Class B felony robbery. Later, the State amended the charging information to add an habitual offender enhancement. The robbery charge was tried to a jury, and the jury found Alexander guilty. The habitual offender enhancement was tried to the bench, and the judge determined that Alexander was an habitual offender.

*Id.*

And finally, here's how the Indiana Court of Appeals laid out the facts from

the unlawful possession of a firearm and stolen car case:

On January 11, 2013, Officer Stephanie Souther was on patrol when she saw a Toyota Camry that had been reported as stolen and as being involved in an armed robbery. She and other officers attempted to stop the Camry, but its driver, later identified as Alexander, refused to stop. Alexander lost control of the car during the subsequent chase and crashed into a house's front porch.

As Souther and other officers approached the car, Alexander crouched down and disappeared from view for a few seconds. Souther believed he was looking for a weapon. Next, he tried to get out of the car, but damage from the crash prevented it. Alexander then tried to put the car into reverse and back up, even though Souther was standing right behind the car. The car was stuck, and officers took Alexander into custody. They searched the Camry and found Nagy's gun between the front passenger seat and the door.

3

The State charged Alexander with unlawful possession of a firearm by a serious violent felon, a Class B felony; receiving stolen auto parts, a Class C felony; and two counts of resisting law enforcement, one as a Class D felony (fleeing in a vehicle) and one as a Class A misdemeanor (refusing to cooperate at the crash site). Later, the State amended the charging information to add an habitual offender enhancement. Alexander pleaded guilty to all charges except the habitual offender enhancement. The enhancement was tried to the bench, and the court determined that he was an habitual offender.

*Id.*

As noted above, the trial court held one sentencing hearing for all three cases. The judge ordered some sentences to run consecutive and some to run concurrent. When all was said and done, Alexander received a total sentence of 102 years. *Alexander v. State*, 13 N.E.3d 557 (Ind. Ct. App. 2014); [DE 11-13 at 2-5].

In each of the petitions, Alexander asserts that he is entitled to habeas relief because the trial court erred by allowing the prosecution to amend the indictment to include a habitual offender enhancement and by imposing an excessive maximum sentence. In each of the petitions, he also asserts that he received ineffective assistance of trial counsel and appellate counsel because they did not object to the prosecution's amendment of the indictment to include a habitual offender enhancement or to the use of only Class D felonies to support the habitual offender enhancement. With respect to the house burglary conviction, Alexander also makes a sufficiency of the evidence argument and claims that his trial counsel failed to investigate a partial palm print and failed to tender jury instructions on lesser-included offenses.

In the traverse, Alexander raises several claims that were not contained in his petitions, including a claim that trial counsel improperly advised him to plead guilty,

4

failed to investigate an alibi defense, failed to properly advise him about the effect of his juvenile adjudications on his sentence, and failed to investigate an email address with which the house burglary victim corresponded. Raising additional claims in this manner was improper, and I decline to further consider these claims.[1] *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases ("The petition must specify all the grounds for relief available to the petitioner."); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("[A] traverse is not the proper pleading to raise additional grounds.").

## Procedural Default

Before considering the merits of a habeas petition, I must first determine whether the petition has been procedurally defaulted. The labyrinth of "procedural default" is where a lot of habeas cases go to die. The first trap for the unwary is if the petitioner fails to exhaust all available remedies in State court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In other words, to get to the merits of a claim, a petitioner must fully and fairly present the federal claim to the State courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment requires "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at

---

[1] Nevertheless, I will note that these claims are procedurally defaulted. I will also note the absence of any indication in the record that conducting an evidentiary hearing or otherwise expanding the record to support these claims would be appropriate. *See Shoop v. Twyford*, 596 U.S. 811, 819 (2022) ("If a prisoner 'failed to develop the factual basis of a claim in State court proceedings,' a federal court may admit new evidence, but only in two quite limited situations. Either the claim must rely on a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by this Court, or it must rely on 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'") (quoting 28 U.S.C. § 2254(e)(2)).

1025 (internal quotations and citations omitted). It is true that fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). But fair presentment does mean the petitioner has to "raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis*, 390 F.3d at 1025-26. If he fails to do so, the claim is a goner. *Id.* at 1026. *See also Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018).

On direct appeal, Alexander presented to the Indiana Court of Appeals his sufficiency of the evidence claim relating to the burglary conviction and his claims that the trial court erred by allowing the prosecution to amend the indictment to include a habitual offender enhancement and by sentencing him to a maximum sentence. [DE 11-5]; [DE 11-8]; [DE 11-11]. However, Alexander did not present the sufficiency of the evidence claim in his petition to transfer to the Indiana Supreme Court. [DE 11-14]; [DE 11-16]; [DE 11-18]. Therefore, that claim is procedurally defaulted.

On post-conviction appeal, Alexander presented to the Indiana Court of Appeals his claims that trial counsel and appellate counsel failed to challenge the use of only Class D felonies to support the habitual offender enhancement and failed to challenge the amendment to the indictment and that trial counsel failed to investigate the partial palm print in the house burglary case. [DE 11-24]; [DE 11-27]; [DE 11-30]. In the petitions to transfer, he presented the ineffective assistance claims relating to the habitual offender enhancement, but he omitted the partial palm print claim, so the

6

partial palm print claim is procedurally defaulted. [DE 11-33]; [DE 11-34]. Likewise, he did not present (at any level) his claim that trial counsel should have sought jury instructions for lesser-included offenses, so this claim is also procedurally defaulted.

In the traverse, Alexander vaguely asserts that, on January 2, 2024, he placed a corrected petition to transfer in the hands of correctional staff, implying that the State is responsible for its untimely filing with the Indiana Supreme Court. It appears that he made this assertion for the purpose of excusing procedural default. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

It is unclear which claims he intends as the focus of this assertion, but it cannot excuse procedural default with respect to any of his claims. The sufficiency of the evidence claim was raised on direct appeal, so proper exhaustion would have required Alexander to have presented this claim in the petition to transfer that he filed in 2014. Further, on post-conviction review, the Indiana Court of Appeals certified its opinion on September 26, 2023, and rejected petitions to transfer filed in November 2023, as untimely. [DE 11-23 at 8]; [DE 11-26 at 7]; [DE 11-29 at 7]. This sequence of events indicates that Alexander's petition to transfer was due before September 26, 2023. It is

thus unclear how the State's alleged mishandling of a petition to transfer in January 2024 could have caused procedural default.

Additionally, I observe that Alexander did not present his claims that trial counsel should have sought jury instructions for lesser-included offenses to the Allen Superior Court on post-conviction review and that he proceeded pro se at that stage. [DE 12-2 at 7-19]. Consequently, I will consider whether I should excuse procedural default on this claim based on lack of post-conviction counsel.

As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas,* 565 U.S. 266, 280 (2012). In other words, because there is no constitutional right to an attorney in state post-conviction proceedings there can be no claim for ineffective assistance of counsel in those proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). However, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Oddly, this exception relating to "inadequate assistance of counsel" includes both when post-conviction counsel renders ineffective assistance as defined by *Strickland* and when a post-conviction petitioner proceeds without counsel. *Id.* at 9, 11-14.

"[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. Significantly, trial counsel's decision not to seek instructions on lesser-included defenses touches on a concept

known as the "all-or-nothing" strategy. *See Barnett v. Godinez*, 61 F.3d 905, at *4 (7th Cir. 1995) ("Presenting the jury with an all-or-nothing choice is generally a reasonable trial strategy because, although it involves a risk, it increases the chances of an acquittal.").

It does not appear that trial counsel's all-or-nothing strategy amounted to deficient performance based on my thorough review of the record. Trial counsel emphasized the absence of evidence on how Alexander "broke into" the victim's house and argued, "We believe the breaking is the most important element here, and the State has not presented sufficient evidence as to whether or not [Alexander] broke into the home." [DE 15-11 at 185]. As noted by trial counsel, the record reflects that the prosecution was unable to identify a manner or point of entry, *see e.g., id.* at 102-03 (testimony of Officer Morales that he was unable to determine a point of entry), so it appears that trial counsel's strategy was reasonably tailored to the charges and evidence. By contrast, the allegations that Alexander had unlawfully entered the residence and stole items had strong support in the form of the identification of Alexander's partial palm print on a table located within the residence and the recovery of the burglary victim's missing heirloom firearm from Alexander during his subsequent arrest. [*Id.* at 116-17, 149].

Moreover, the effectiveness of trial counsel's strategy was demonstrated during deliberations when the jurors asked, "If [Alexander] did not physically open the door/window himself, if another person opened the door/window, would [Alexander] still be considered breaking and entering if he followed the person who opened the door/window?" [DE 15-11 at 193]. The jury deliberated for more than two hours. [*Id.* at

191, 193]. Though the jury ultimately convicted Alexander of burglary, the record strongly suggests that trial counsel's all-or-nothing strategy made their decision a more challenging one. As a result, I cannot find that this claim is substantial or that it should be excused under *Martinez*.

To summarize, due to unexcused procedural default, I will not further discuss the claims relating to sufficiency of the evidence or trial counsel's failure to investigate the partial palm print or to tender jury instructions on lesser-included offenses. However, the properly exhausted claims must be considered on the merits. They include: 1) that the trial court erred by allowing the prosecution to amend the indictment to include a habitual offender enhancement; 2) relatedly, ineffective assistance of trial and appellate counsel for failing to object to the prosecution's amendment of the indictment to include a habitual offender enhancement or to the use of Class D felonies to support the habitual offender enhancement; and 3) the trial court's sentencing of Alexander to a maximum sentence without finding aggravating factors. I'll take up each claim in turn below, combining my discussion of claims one and two.

## Standard of Review

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 575 U.S. 312, 316 (2015). Here's the governing statute:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

10

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Congress has purposely made this a difficult standard to meet. To satisfy this exacting standard, petitioner is required to show that the state court's ruling was "so lacking in justification" that there was an obvious error "beyond any possibility for fair minded disagreement." *Woods,* 575 U.S. at 316. This means a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

### Claims Relating to the Habitual Offender Enhancement

Alexander argues that he is entitled to habeas relief because he received ineffective assistance of trial counsel and appellate counsel in connection with his habitual offender enhancement. He contends that counsel erred by not objecting to the prosecution's amendment of the indictment to include a habitual offender enhancement or to the use of Class D felonies to support the habitual offender enhancement. To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,

11

under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

Alexander also argues that he is entitled to habeas relief because the trial court erred by allowing the prosecution to amend the indictment to include a habitual offender enhancement. While Alexander largely bases this argument on State statutory law, the argument could be construed as an argument that he did not receive adequate notice of the habitual offender enhancement because the timing of the amendment did not allow him sufficient time to prepare a trial defense. *See Chambers v. Mississippi*, 410 U.S. 284, 294, (1973) ("The right of an accused in a criminal trial to due process is, in

essence, the right to a fair opportunity to defend against the State's accusations."). This argument also has substantial overlap with Alexander's ineffective assistance of counsel claims.

At the time of the offenses, Indiana law allowed prosecutors to charge individuals with a habitual offender enhancement "for any felony by alleging . . . that the person has accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8(a) (2005). In the July 2014 amendment of this statute, Indiana added a requirement that "at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony."[2] Ind. Code § 35-50-2-8(b)(2), (c)(2) (2014). The July 2014 amendment also imposed timeliness requirements on the prior unrelated felonies used to support the habitual offender enhancement under certain circumstances. Ind. Code § 35-50-2-8(b), (c) (2014).

At the time of the offenses, Indiana law allowed prosecutors to amend charges to add habitual offender enhancement charges as follows:

> An amendment of an indictment or information to include a habitual offender charge . . . must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial.

Ind. Code § 35-34-1-5(e) (2007).

---

[2] Prior to 2014, Indiana law grouped felonies by severity of the offense in Classes A through D. Thereafter, Indiana law reclassified felonies by severity of the offense into Levels 1 through 6. Class D and Level 6 offenses are the lowest level felonies in each of their respective classification systems.

At the initial hearings in January and February 2013, the trial court set March 4, 2013, as the omnibus date for the armed robbery and stolen vehicle cases and set March 25, 2013, as the omnibus date for the burglary case. [DE 11-1 at 1]; [DE 11-2 at 2]; [DE 11-3 at 3]. On April 18, 2013, the prosecution moved for leave to file habitual offender enhancement charges in all three cases. [DE 12-2 at 70-71]. In the motion, the prosecution acknowledged the untimely nature of the amendment but explained that the initially assigned prosecutor had been appointed to a magistrate judge position. [*Id.*] According to the motion, this substitution of counsel combined with personal and professional scheduling conflicts prevented the new prosecutor from reviewing Alexander's cases sooner. [*Id.*]

On April 25, 2013, the trial court held a hearing on pending motions. [DE 12-2 at 73-74]. The trial court took the motion to amend under advisement but granted trial counsel's oral motion to continue the trial date. [*Id.*] On May 7, 2013, the prosecution filed a revised motion to amend to revise the list of prior unrelated felony conviction. [*Id.* at 75-76].

The proposed revised amendment listed the following prior unrelated felony convictions:

- On August 11, 1999, the Allen Superior Court sentenced Alexander in Case No. 02D04-9905-DF-328 for committing the offense of receiving stolen automobile parts, a Class D felony, on April 27, 1999;

- On June 10, 2004, the Allen Superior Court sentenced Alexander in Case No. 02D04-0401-FD-30 for committing the offense of residential entry, a Class D felony, on January 15, 2004; and

14

- On August 2, 2010, the Allen Superior Court sentenced Alexander in Case No. 02D04-1005-FD-501 for committing the offense of invasion of privacy, a Class D felony, on May 23, 2010.

[*Id.*]

On May 23, 2013, the trial court held another hearing. [DE 12-2 at 77]. According to the minutes, Alexander waived an initial hearing on the habitual offender enhancement charges and pled not guilty. [*Id.*] The trial court also reset the trial date for burglary and stolen vehicles cases to August 20, 2013, and reset the trial date for the armed robbery case to September 4, 2013. [*Id.*]; [DE 11-2 at 6].

On August 21, 2013, the trial court held a bench trial on the habitual offender charges in the burglary and stolen vehicle cases. [DE 15-18].[3] In opening, trial counsel represented that he had previously objected to the habitual offender charge on the bases that the amendment was untimely and that the internal reassignment of the case with the prosecutor's office did not constitute good cause to excuse the untimeliness. [*Id.* at 198-200]. The prosecution argued that the trial continuance adequately remedied the untimely amendment. [*Id.*] The trial court reaffirmed its prior ruling allowing the amendment but noted the objection while observing that the State appellate courts would likely review the ruling on direct appeal. [*Id.*] The prosecution presented certified copies of criminal information and judgments to demonstrate that Alexander had committed prior unrelated felonies. [*Id.* at 201-203]. Trial counsel did not dispute that Alexander had committed these felonies but indicated the intent to rely solely on

---

[3] The page number pincites to this document refer to the page numbers found in the bottom middle of the page.

the timeliness argument. [*Id.* at 203]. The prosecution also called witnesses to establish Alexander's identity in connection with the prior unrelated felonies. [*Id.* at 204-215]. The trial court found Alexander guilty of the habitual offender charges. [*Id.* at 216-17].

On September 4, 2013, the trial court held a bench trial on the habitual offender charges in the armed robbery case. [DE 15-2 at 140-50]. The parties reiterated their positions and arguments from the prior bench trial and also resubmitted the same evidence, and the trial court found Alexander guilty of the habitual offender charges. [*Id.*] The trial court noted that it had found good cause to excuse the untimeliness and no prejudice to the defendant in ruling that the prosecution could proceed on the amended charges. [*Id.*] It also noted trial counsel's objection and observed that the State appellate court would review the ruling for abuse of discretion. [*Id.*]

On direct appeal, Alexander, through appellate counsel, argued that the trial court erred by allowing the prosecution to add a habitual offender enhancement in an untimely manner. [DE 11-5]; [DE 11-8]; [DE 11-11]. The Indiana Court of Appeals found that the record did not adequately demonstrate that Alexander had objected to the amendment during pretrial proceedings, noting the lack of written objections and hearing transcripts and the omission of any recorded objections in the minute entries. [DE 11-13 at 7-9]. The appellate court also acknowledged the references to "renewed" objections in the bench trial transcripts but found these references insufficient to establish that trial counsel had properly preserved the argument by making a pretrial objection. [*Id.*]

16

The appellate court further found that the trial court would not have abused its discretion by allowing the amendment even if trial counsel had properly objected. [*Id.*] It reasoned that the purpose of the statutory provision governing the timeliness of habitual offender charges was to give defendants sufficient time to prepare a defense and that Alexander had nearly four months to prepare between the amendment and the first bench trial on the habitual offender charges. [*Id.*]

On post-conviction review, Alexander argued that trial counsel failed to object to the addition of the habitual offender enhancement charge. The Indiana Court of Appeals found that Alexander had not adequately demonstrated prejudice, noting its conclusion on direct appeal that the timing of the habitual offender amendment did not deprive Alexander of a reasonably opportunity to defend himself. [DE 11-32 at 15-16].

Alexander also argued that appellate counsel failed to object to the addition of the habitual offender enhancement charge. The Indiana Court of Appeals rejected this argument on the basis that appellate counsel had raised such an objection on direct appeal and that Alexander had not demonstrated that appellate counsel's argument amounted to deficient performance or prejudice. [*Id.* at 13].

Additionally, Alexander argued that appellate counsel and trial counsel failed to challenge the sufficiency of the evidence for the habitual offender verdict because the prior unrelated felonies consisted entirely of Class D felonies. The Indiana Court of Appeals rejected this argument on the basis that, at the time of the offenses, the statutory provision governing the timeliness of habitual offender charges allowed such prior unrelated felonies to support a habitual offender enhancement. [*Id.* at 15]. The

17

appellate court declined to find that appellate counsel and trial counsel performed deficiently by failing to anticipate a change in the law. [*Id.*]

After reviewing the record, I cannot find that the State courts rendered unreasonable determinations on the claims relating to the habitual offender enhancement. To start, I observe that, at the bench trials, the trial court indicated its belief that the timeliness objection had been properly preserved for appeal. Though the State appellate court found otherwise, the trial court's decision at the bench trials to deny the timeliness objection with the understanding that a prior objection had been made by trial counsel strongly suggests that the trial court would not have sustained a prior objection by trial counsel. The appellate briefs also demonstrate that appellate counsel challenged the timeliness on direct appeal, and this appellate challenge closely resembles Alexander's arguments relating to the timeliness of the amendment on federal habeas review. The reasoning of the State appellate court also indicated that it would have upheld the trial court's ruling even if it found that trial counsel had properly preserved the objection for appellate review. As a result, Alexander has not adequately demonstrated that he received ineffective assistance of counsel with respect to the timeliness of the amendment.

With respect to trial court error, Alexander primarily argues that the trial court erred by finding good cause to excuse the untimely amendment under Ind. Code § 35-34-1-5(e) (2007). However, this issue is a matter of State law, which I decline to consider as a basis for habeas relief. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[W]e have repeatedly held that federal habeas corpus relief does not lie for errors of state law.").

The salient question for purposes of habeas review is whether the timing of the amendment deprived Alexander of a reasonable opportunity to defend himself. The record reflects that it did not. The trial court continued the trials in all three cases allowing Alexander about four months after the amendment to prepare. And Alexander offers no explanation as to why nearly four months was insufficient to prepare a defense. At the bench trials, trial counsel did not contest Alexander's guilt with respect to the habitual offender enhancement, and the record does not include any material basis for contesting Alexander's guilt as to the habitual offender enhancement. As a result, I cannot find that the State courts unreasonably determined that the timing of the amendment did not deprive Alexander of a reasonable opportunity to defend against the habitual offender enhancement charge.

I also agree with the State courts' decision that counsel did not err by declining to challenge the prior felonies used to support the habitual offender enhancement. The version of Ind. Code § 35-50-2-8 applicable to Alexander's criminal cases did not prohibit the use of only Class D felonies to support a habitual offender enhancement. Though Indiana amended this statute in July 2014 to include such a prohibition, the Indiana courts have declined to apply this prohibition retroactively to those who committed or were convicted of offenses prior to the July 2014 amendment. *Grundy v. State*, 38 N.E.3d 675, 685 (Ind. Ct. App. 2015) (holding in the context of the July 2014 amendment that "the law in effect when the crime was committed controls sentencing."); *see also Cox v. State*, 38 N.E.3d 702, 704 (Ind. Ct. App. 2015) (declining to apply the doctrine of amelioration to the July 2014 amendment). The record contains no

19

suggestion that counsel should have foreseen this change in the law, and, further, any argument by counsel that the then-prospective amendment should have applied to Alexander would have been futile. Therefore, the claims relating to the habitual offender enhancement are not a basis for habeas relief.

The oppressive habitual offender law was employed in this case based on three Class D felonies, two of which were dated. If it was used the same way today, it would be unlawful. Let's be honest about it: this was, to say the least, an aggressive use of the law. But unfortunately for Mr. Alexander, it was entirely lawful.

**Excessive Sentence**

Alexander also argues that he is entitled to habeas relief because the trial court did not find any aggravators regarding the nature of the offenses, because he is not the "one of the worst" and did not commit the "most heinous crimes," because, at sentencing, the trial court told him, "I see nothing but to warehouse you," and because he did not inflict any physical harm during the offenses. Additionally, Alexander vaguely references the Sixth Amendment in the petition, which I generously construe as tying in with the argument under *Blakely v. Washington*, 542 U.S. 296 (2004), set forth in his traverse. Notably, Alexander did not challenge his sentence on direct appeal on constitutional grounds, so any habeas claims relating to his sentence would be procedurally defaulted.

Nevertheless, the essence of Alexander's arguments is that his sentence is excessive, so I will consider whether Alexander received a constitutionally excessive sentence. "A federal court will not normally review a state sentencing determination

20

[that] falls within the statutory limit." *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997).

"However, we shall review a petitioner's showing that the sentencing court lacked

jurisdiction to impose this term or committed a constitutional error making the sentence

fundamentally unfair." *Id.* "A sentence violates the Constitution if it is extreme and

grossly disproportionate to the crime." *Id.* "However, [i]n non-capital felony

convictions, a particular offense that falls within legislatively prescribed limits will not

be considered disproportionate unless the sentencing judge has abused his discretion."

*Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000); *see also Gleason v. Welborn*, 42 F.3d 1107,

1112 (7th Cir. 1994); *Moore v. Hulick*, 2008 WL 268793, at *12–13 (C.D. Ill. 2008) *Malone v.*

*Farrey*, 2006 WL 1937684, at *5 (E.D. Wis. 2006); *Davilla v. Clark*, 159 F. Supp. 2d 1081,

1085–86 (N.D. Ill. 2001).

Under Indiana law, the sentencing ranges for the crimes of Alexander's

convictions at the time he committed the crimes were as follows:

| Nature of Offense | Offense Class | Sentencing Range |
|---|---|---|
| Burglary of a Dwelling, Ind. Code § 35-43-2-1 (1999) | Class B felony | 6-20 years with an advisory sentence of 10 years, Ind. Code § 35-50-2-5 (2005) |
| Armed Robbery, Ind. Code § 35-42-5-1 (1984) | Class B felony | 6-20 years with an advisory sentence of 10 years, Ind. Code § 35-50-2-5 (2005) |
| Unlawful possession of firearm by serious violent felon, Ind. Code § 35-47-4-5 (2012) | Class B felony | 6-20 years with an advisory sentence of 10 years, Ind. Code § 35-50-2-5 (2005) |
| Receiving stolen automobile parts, Ind. Code § 35-43-4-2.5 (1991) | Class C felony | 2-8 years with an advisory sentence of 4 years, Ind. Code § 35-50-2-6 (2005) |

| Resisting Law Enforcement, Ind. Code § 35-44.1-3-1(b)(1) (2012) | Class D felony | 0.5-3 years with an advisory sentence of 1.5 years, Ind. Code § 35-50-2-7(a) (2012) |
| Resisting Law Enforcement, Ind. Code § 35-44.1-3-1(a)(1) (2012) | Class A misdemeanor | 0-1 years with no advisory sentence, Ind. Code § 35-50-3-2 (1977) |
| Habitual Offender Status, Ind. Code § 35-50-2-8 (2005) | Sentencing enhancement | 10-30 years, Ind. Code § 35-50-2-8(h) (2005) |

The applicable version of Ind. Code § 35-38-1-7.1 lists the following aggravating factors for sentencing determinations:

> (1) The harm, injury, loss, or damage suffered by the victim of an offense was:
>
>> (A) significant; and
>>
>> (B) greater than the elements necessary to prove the commission of the offense.
>
> (2) The person has a history of criminal or delinquent behavior.
>
> * * *
>
> (6) The person has recently violated the conditions of any probation, parole, pardon, community corrections placement, or pretrial release granted to the person.

Ind. Code § 35-38-1-7.1 (2005).

At sentencing, Alisia Peggins testified that Alexander placed her family and her neighbors in danger and destroyed a portion of her home when he crashed the stolen vehicle. [DE 15-3 at 14-15]. Officer Souther testified that, after Alexander had crashed the stolen vehicle, she saw Alexander duck out of view for five to ten seconds. [*Id.* at 15-19]. At this time, she believed that Alexander was searching for the gun, and a gun was

recovered from the stolen vehicle soon thereafter. [*Id.*] She further testified that Alexander placed the stolen vehicle in reverse and pressed the accelerator pedal with Officer Souther in the vehicle's path but that the stolen vehicle did not move because it was stuck. [*Id.*] According to Officer Souther, if Alexander had located the gun or if the vehicle had moved, she or Alexander may have died as a result. [*Id.*] Two other officers involved in the arrest submitted similar written statements. [*Id.* at 20-21].

After recounting Alexander's convictions, the trial court stated as follows:

**Trial Court:** Your attorney has asked that I consider mitigating circumstances beginning with your plea of guilty in [the stolen vehicle case]. That is a mitigating circumstance and I accept that mitigating circumstance. That you did in fact plead guilty in [the stolen vehicle case] to Counts 1 through 4 and went to a bench trial on [the habitual offender enhancement]. Your attorney has asked that I consider your substance abuse as a mitigating circumstance supported by the presentence investigation report and supported by your comments here today as well. I'm not sure if the mitigating circumstance of being a substance abuser relates to the crime that you were convicted of and whether or not your substance abuse was driving the crimes . . .

**Alexander:** . . . Your Honor . . .

**Trial Court:** . . . That you were convicted of but you've indicated that that is the case and I'll find it to be a mitigator but I don't give it a tremendous amount of weight based on your multiple attempts at treatment. Your attorney has asked that I consider your employment as a mitigating circumstance. I refuse to find that as a mitigator. You should be working, Mr. Alexander. You're a strapping young man capable of employment and you should be employed. You have expressed remorse in court as a mitigating circumstance and I will accept that but as I indicated with the substance abuse, I don't weight that terribly heavy. Much of your remorse is self-directed and that's understandable considering the position that you find yourself in. But you have apologized and I believe Ms. Peggins accepted the apology, the homeowner lady. You apologized to the officer so you have expressed an expression of remorse.

I do find aggravating circumstances, Mr. Alexander. From 1995 to 2013, you have an astonishing criminal record. Six adjudications as a juvenile. Seventeen misdemeanor convictions. Eight prior felony convictions. You have been given the benefit of juvenile probation, Wood Youth Center, the education track program with the juvenile courts. As an adult, you were given the benefit of community service and jail, short jail sentences and then longer jail sentences. Multiple attempts at treatment throughout the course of your life, both in and out of the Department of Correction. I noted specifically Brown and Associates and Addictive Behaviors. You've been in the Department of Correction. You have been on parole. You have been on home detention and I believe you were in the reentry court program. And in fact were on parole when these offenses were committed.

You've just committed one violent offense after another, Mr. Alexander. As a juvenile, resisting law enforcement, conversion, three counts of sexual battery, minor consuming, residential entry. As an adult, criminal conversion, minor consuming, false informing a couple of times, more resisting, criminal trespass, receiving stolen property, another resisting, public intoxication, possession of marijuana, resisting law enforcement, operating while intoxicated, robbery, battery, criminal trespass, residential entry, possession of marijuana, another possession of marijuana, resisting law enforcement, criminal trespass, invasion of privacy, criminal mischief, battery, invasion of privacy, possession of marijuana and the instant offenses . . . that bring you to court today.

**Alexander:** May I say one thing, your honor?

**Trial Court:** Go ahead.

**Alexander:** (unintelligible words) Now it doesn't really get deep into the, I'm saying, the details of all my cases. No one really beyond the bold face (unintelligible word) the charge to find out why the situation took place but as you sat there and you read, if you realize you just read a lot of resisting law enforcement. These are really because I was just trying not to go to jail. I might've had a court date I missed. I might've [resisted], you know what I'm saying, by not trying to be handcuffed or anything. I don't think really I was being violent.

**Trial Court:** Well, the State of Indiana disagrees with you, Mr. Alexander, because resisting law enforcement is a violent offense.

You are an articulate, intelligent young man. You have a sister that had to testify against you and identify you as the individual. I can't imagine what she went through having to point at you across the room during that trial and she's here today to testify on your behalf and to support you and I admire that, ma'am. I know that you love your brother and this has got to be a difficult thing for you. I know it was difficult for you to testify at trial and I know that it's difficult for you today. You've got large dark circles under your eyes that indicate that you've had some stress with this. Ms. Peggins testified in State's Exhibits 1 through 4, crashing into her home. The officer who testified at your trial and has testified here today. I'm at a loss, Mr. Alexander. In reviewing your PSI again last night and going through all of the opportunities that have been afforded to you throughout the course of your life beginning when you were a juvenile and that you just continue to do what you want to do and it's clear to me unfortunately Mr. Alexander that you fall into that category of offender that we just have to warehouse because if you're not in custody you're out committing crime. You're robbing, you're burglarizing, you're taking people's property, you're taking their vehicles. I had the same thought that the State had when you took this woman's car, what would've happened had there been children in that car and what would you have done.

**Alexander:** Again for the record, we're going off of theories.

**Trial Counsel:** Justin. Justin.

**Trial Court:** It doesn't matter. It doesn't matter, Mr. Fisher, you're fine.

[*Id.* at 34-39].

The trial court sentenced him to the maximum term of years on each count. [*Id.* at 39-41]. It ordered the sentences to run consecutively (with exceptions for two of the three habitual offender enhancements) for an aggregate sentence of 102 years. [*Id.*]

On direct appeal, the Indiana Court of Appeals declined to find that the trial court abused its discretion by affording little weight to proffered mitigating factors of Alexander's employment, his guilty plea in the stolen vehicle case, his history of substance abuse, and his expression of remorse. [DE 11-13 at 10-11]. The appellate court

25

observed that the trial court had considered these mitigating factors and had adequately explained their limited impact on his sentencing decision. [*Id.*]

On direct appeal, Alexander also asked that the Indiana Court of Appeals to revise his sentence because it was inappropriate in light of the nature of his offenses and his character. [*Id.* at 11-15]. The appellate court noted that Alexander's conduct in the stolen vehicle case had placed the lives of police officers, motorists, and neighborhood residents in danger during his efforts to evade the police. [*Id.*] In assessing Alexander's character, the appellate court considered Alexander's extensive criminal history throughout his adult life and the fact that he committed crimes charged in three separate criminal cases within a short span of two weeks. [*Id.*] The appellate court concluded that Alexander, who had reached 34 years of age by sentencing, had demonstrated "an absolute unwillingness to lead a law-abiding life, regardless of who may be endangered by his misconduct." [*Id.* at 14].

After reviewing the record, I cannot find that the State courts made an excessive sentencing determination. Alexander does not dispute that his aggregate sentence fell within the statutory range, albeit at the maximum end of that range. As a result, he has no viable claim under *Blakely v. Washington*, 542 U.S. 296, 301 (2004), which stands for the proposition that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Further, the applicable sentencing statute does not require trial courts to find an aggravating circumstance relating to the nature of the offense to impose a maximum sentence. That said, Alexander's contention that he caused no harm

to individuals or property beyond what was charged is flatly contradicted by the testimony of Ms. Peggins and Officer Souther.

It was permissible for the trial court to place great weight on Alexander's criminal history and his unsuccessful efforts at rehabilitation. The criminal history reflects that Alexander has now committed dozens of crimes throughout his teenage and adult life without any sign of rehabilitation, and he was 34 years old at the time of sentencing. Though the trial court's reference to "warehousing" Alexander was unfortunate and harsh, it is clear from its full context that the reference is an understandable comment on Alexander's outsized capacity for recidivism rather than an improper political statement as Alexander suggests.

Alexander also maintains that he should not have received a maximum sentence because he is not "the worst of the worst" as he did not physically harm anybody. This argument is misplaced. If Alexander had caused physical harm to others, it would have likely resulted in the prosecution charging him with additional or higher-level felonies and exposed him to even longer terms of incarceration, including life without possibility of parole, and, in the most extreme cases, the death penalty. *See e.g.,* Ind. Code § 35-50-2-3 (2007) (45-65 years, life without possibility of parole, or death sentence for murder); Ind Code § 35-50-2-4 (2005) (20-50 years for Class A offense). The existence of these higher felony levels with substantially harsher punishments demonstrate that Alexander was neither charged nor sentenced as a criminal who was among "the worst of the worst." And Alexander makes no compelling argument that, with his criminal

27

history, he is not among "the worst of the worst" when properly compared with those charged with a similar quantity of similar low-level offenses.

In sum, reasonable minds might disagree over whether a 102-year sentence was justified given all of the circumstances in this case. But it cannot be said that such a sentence amounts to an abuse of discretion. Therefore, the claim that Alexander received an excessive sentence is not a basis for habeas relief.

## Certificate of Appealability

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Alexander to proceed further.

For these reasons, the Court **DENIES** the amended habeas corpus petitions in 3:24-cv-235, 3:24-cv-236, and 2:24-cv-237; **DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and **DIRECTS** the Clerk to enter judgment in favor of the Respondent and against the Petitioner in all three cases.

**SO ORDERED**.

ENTERED: February 14, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT